IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-00918-RM-NYW

JOHN CHINNOCK,

    Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

    Defendant.

---

**ORDER**

---

This insurance lawsuit is before the Court on Plaintiff's Motion to Strike (ECF No. 57), Defendant's Motion for Partial Summary Judgment (ECF No. 58), Defendant's Motions to Preclude Testimony (ECF Nos. 59, 61), and Defendant's Motion to Strike (ECF No. 73). The Motions are fully briefed and ripe for review.

**I.    BACKGROUND**

In June 2015, Plaintiff was injured in a motor vehicle accident caused by another driver. In September 2018, Defendant, Plaintiff's insurer, authorized Plaintiff to settle his liability claim against the other driver for the policy limits of $100,000. Plaintiff now seeks recovery of underinsured motorist ("UIM") benefits from Defendant. The main dispute with respect to Plaintiff's entitlement to benefits is whether he sustained a traumatic brain injury ("TBI") from the accident. Although Plaintiff was discharged from the emergency room without a diagnosis of any head injury, his treatment providers subsequently diagnosed a TBI. At Defendant's request, Plaintiff was examined by Dr. Bruce L. Morgenstern in November 2019.

Dr. Morgenstern concluded that Plaintiff did not sustain a TBI. (ECF No. 67-4 at 10.) After Defendant denied Plaintiff's claim, he submitted two rebuttal letters from treating physicians who sharply disagreed with Dr. Morgenstern's report. Defendant denied Plaintiff's claim for a second time in February 2020.

In addition to his claim for UIM benefits under his policy, Plaintiff also asserts claims for bad faith breach of insurance contract and unreasonable delay or denial of insurance benefits. In what is poised to become a battle of experts with respect to Plaintiff's alleged TBI and Defendant's alleged bad faith, this case is set to be tried to a jury in June 2023.

## II. LEGAL STANDARDS

### A. Expert Testimony

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019).

If the Court determines that an expert is sufficiently qualified to render an opinion, it must then determine whether the expert's opinion is reliable by assessing the underlying

reasoning and methodology. *See id.* In doing so, the Court considers (1) whether the testimony is based on sufficient facts or data, (2) whether it is the product of reliable principles and methods, and (3) whether the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid. 702(b)-(d).

If the evidence is sufficiently reliable, the Court then evaluates whether the proposed evidence or testimony is sufficiently relevant that it will assist the jury in understanding the evidence or determining a fact at issue. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005). The Court has discretion in how it performs its gatekeeper function. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

> **B.     Summary Judgment**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where, as here, the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment bears the initial burden of showing an absence of any issues of material fact. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 994 (10th Cir. 2019). If the moving party demonstrates that the nonmoving party's evidence is insufficient to establish an

essential element of his claim, the burden shifts to it to set forth specific facts showing that there is a genuine issue for trial. *See id.* If it fails to make a showing sufficient to establish the existence of an element, summary judgment must be entered in favor of the moving party. *See id.*

"The substantive law of the case determines which facts are material." *United States v. Simmons*, 129 F.3d 1386, 1388 (10th Cir. 1997). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).

### III.   ANALYSIS

#### A.   Defendant's Motion to Preclude Testimony of Dr. Perrillo

To support his position that he sustained a TBI from the accident, Plaintiff retained Dr. Richard J. Perrillo, who was endorsed to testify as an expert regarding "Plaintiff's history, neuropsychological exam, studies, diagnosis/assessment, treatment, causation, reasonableness and necessity of the costs of treatment, limitations and restrictions, prognosis, permanency, and likelihood and expenses associated with future care and treatment." (ECF No. 69-1 at 3.) Dr. Perrillo produced a report containing a combination of neuropsychiatric and neuropsychological conclusions based on tests he performed. (ECF No. 61-2.) The report concludes, inter alia, that Plaintiff sustained a mild TBI from the accident. (*Id.* at 22.) Defendant seeks to exclude certain opinions by Dr. Perrillo on the grounds that they are

4

unreliable and fail to meet the standards of Fed. R. Evid. 702.  Defendant does not dispute that Dr. Perrillo is sufficiently qualified to render an opinion (ECF No. 61 at 3 n.2), so the Court's inquiry is focused on whether his opinions are reliable and relevant.

Citing a report by one of its rebuttal experts, Defendant specifically objects to Dr. Perrillo providing any opinions regarding the "ANAM GNS tests" he administered to Plaintiff, arguing Plaintiff scored so poorly on five of them that "Dr. Perrillo should have recognized the scores were not valid and/or not reliable."  (ECF No. 61 at 5.)  Defendant also argues that the comparison group used by Dr. Perrillo is inadequate.  But the fact that experts disagree on how to interpret Plaintiff's test results does not render them inadmissible.  Defendant does not argue that the tests themselves are not reliable or that they were improperly administered to Plaintiff.  Under the circumstances, the Court finds that Dr. Perrillo's opinions with respect to "ANAM GNS tests" are reliable and relevant.  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *O'Sullivan v. GEICO Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quotation omitted).

Defendant also argues that Dr. Perrillo improperly relied on composite scores that he created himself and that were not subject to scientific scrutiny or peer review.  Not surprisingly, Plaintiff disputes this characterization of his analysis.  But again the Court views this as a dispute about how to interpret Plaintiff's test results—a topic on which experts may disagree and present competing interpretations for the jury's consideration.  *See id.*  "Ultimately, the rejection of expert testimony is the exception rather than the rule."  *Id.* (quotation omitted).  The Court finds that the disagreement here does not render Dr. Perrillo's opinions inadmissible.

Defendant next argues that Dr. Perrillo made improper assumptions about Plaintiff's pre-

5

accident IQ.  This dispute appears also to be centered on how to properly interpret Plaintiff's test results.  With respect to that issue, each side may present its case to the jury at trial.

Based on the arguments above, Defendant goes on to argue that Dr. Perrillo should be precluded from offering his opinion that Plaintiff suffered a TBI from the accident.  Because the Court has rejected those arguments, Dr. Perrillo will not be precluded from presenting to the jury his conclusion that Plaintiff sustained a TBI, and Defendant's Motion to Preclude is denied.

### B.     Defendant's Motion to Strike Dr. Perrillo's Affidavit

With his Response to Defendant's Motion to Preclude, Plaintiff submitted an affidavit by Dr. Perrillo.  Defendant contends that because the affidavit introduces new opinions and sources that were not previously disclosed, it is "a disguised sur-rebuttal report" and should be stricken. (ECF No. 73 at 11.)  Plaintiff responds that the affidavit "is specifically directed to the unfair, unfounded, and uninformed accusations" in the Motion to Preclude.  (ECF No. 80 at 1.)  The Court agrees with Defendant that portions of the affidavit are aimed at refuting its rebuttal experts.  Indeed, a portion of the affidavit discusses one of the rebuttal experts by name.  (ECF No. 67-9 at 9, ¶ 27.)  Thus, although the Court is denying Defendant's Motion to Preclude, it will also grant the request to strike the affidavit.  However, the granting of this Motion should not be construed as placing any limitations on Dr. Perrillo's testimony at trial.  Such determinations will be made as needed during trial.

### C.     Plaintiff's Motion to Strike Rebuttal Experts

In Response to Dr. Perrillo's report, Defendant sought and obtained the Court's permission to retain two rebuttal experts: Dr. Jose M. Lafosse, a neuropsychologist, and Dr. Hal Stephen Wortzel, a neuropsychiatrist.  (*See* ECF No. 29 at 2.)  They produced their own reports. (ECF Nos. 61-3, 75-9.)

Plaintiff contends Drs. Lafosse and Wortzel are affirmative experts who should have been, but were not, disclosed before the deadline for affirmative experts set by the magistrate judge. He argues that these experts should be stricken because Defendant knew about his TBI claim before that deadline. In response, Defendant argues these experts were timely disclosed because their opinions rebut that of Dr. Perrillo and that they will only be called to testify to rebut any testimony Dr. Perrillo provides. The Court declines to strike these experts for the reasons below.

A party must disclose expert witnesses "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rebuttal expert testimony is evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal expert reports necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their reports." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. Apr. 21, 2016) (unpublished) (quotation omitted). "By contrast, an affirmative expert serves to establish a party's case-in-chief." *Id.*

Drs. Lafosse and Wortzel both concluded that Plaintiff did not sustain a TBI from the accident—the opposite conclusion reached by Plaintiff's affirmative expert, Dr. Perrillo. The Court could deny Plaintiff's Motion on that basis alone. To the extent these experts might offer new theories or address topics not addressed by Dr. Perrillo, any objections by Plaintiff will be addressed at trial.

Moreover, even if there were a disclosure violation, "[t]he decision to exclude evidence is a drastic sanction." *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). A failure to disclose may be deemed substantially justified or harmless based on the following

7

factors: "(1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness." *O'Sullivan*, 233 F. Supp. 3d at 933. Here, the Court discerns no prejudice to Plaintiff, where the scheduled trial is over a year away. Plaintiff should not be at all surprised that Defendant would present rebuttal experts in response to Dr. Perrillo's report. In addition to the absence of any prejudice or potential disruption of trial, the Court discerns no bad faith or willfulness on the part of Defendant. Therefore, this Motion is denied.

### D. Defendant's Motion to Preclude Testimony of Mr. Dietz

In support of his bad faith claims, Plaintiff disclosed Rob Dietz as an insurance industry expert who will testify about insurance claims practices and procedures and insurance bad faith issues. Mr. Dietz's report includes the following six opinions:

(1) The reasonable industry standard is to complete a prompt, objective and thorough investigation, leading to a prompt and fair evaluation. *[Defendant] failed to meet this standard.*

(2) It is a reasonable industry standard to consider evidence that supports payment of a claim, and not seek out to defeat the claim. *[Defendant] did not meet this standard.*

(3) The reasonable industry standard is to provide a reasonable explanation to the insured when there is a denial or compromise offer of benefits. *[Defendant] failed to meet this standard.*

(4) The reasonable industry standard is to demonstrate some, if not equal consideration to the interests of the insured. *[Defendant] failed to meet this standard.*

(5) The reasonable industry standard is to not unreasonably compel the insured to litigate for benefits. *[Defendant] failed to meet this standard.*

(6) The reasonable industry standard is to both adopt and implement reasonable standards or policy and procedures to conduct the business of claims. *[Defendant] failed to do so.*

(ECF No. 59-2 at 20-24 (emphasis added).)  According to Mr. Dietz's report, these standards are derived from the Model Unfair Claims Settlement Practices Act, portions of which have been codified in Colorado's Unfair Claims Settlement Practices Act.  *See* Colo. Rev. Stat. § 10-3-1104(1)(h).

Defendant argues that opinions 1-4 and 6 should be excluded because they are based on insufficient facts or data.  Defendant also argues that opinions 2, 3, 5, 6, and the following opinions from the report should be excluded because they are impermissible legal conclusions that impermissibly usurp the functions of the judge and jury:

> (7)     *[Defendant] has failed to adopt and implement reasonable policies and practices for claims handling.  The claims handling practices evidenced in this case are a gross departure from accepted reasonable industry standards followed by insurers.*  With liability a non-issue, this UIM claim is denied, and is being defendant by [Defendant] as a reasonable dispute in evaluation by the parties.  In my opinion, this is far from the truth as evidenced by the facts.
>
> (8)     The adjuster testified that reasonable standards include equal consideration of the insured's best interests.  However, *[Defendant] did not even pay lip service to this standard*—ignoring all of the objective evidence, more than just a preponderance, which supported [Plaintiff's] claims.
>
> (9)     *Reasonable industry standards were not implemented here.*  The claim practices I have reviewed are a gross departure from recognized industry standards.
>
> (10)    The claims file and testimony is evidence that causes me to opine that *this claim handling represents indifference, recklessness; it was unfounded.*  It was not accidental.  The title of the claims adjuster indicates he is seasoned, not a rookie at his job.  He testified this is how he handles his claims.  He did not go rogue or act as a lone wolf, as management was involved in the decisions to default to the hired doctor, ignore the insured's treating medical providers, and deny the UIM claim.
>
> (11)    The claims practices I have reviewed were not helpful or geared towards honesty and fairness to the insured.  Instead, *these practices are predatory in nature, and knowingly harmful by the management that is responsible for these staffing and training responsibilities.*

(ECF No. 59-2 at 19-25 (emphasis added).)  Plaintiff contends that Mr. Dietz's testimony is

based on sufficient facts and data and is admissible. The Court will limit Mr. Dietz's testimony as follows.

The central issue with regard to Plaintiff's bad faith claims is the reasonableness of Defendant's conduct. "The reasonableness of an insurer's conduct is determined objectively, based on proof of industry standards." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1227 (10th Cir. 2016). Accordingly, Mr. Dietz may testify about what he believes to be the relevant industry standards. He may also explain how Defendant's conduct did or did not comport with those standards. *See O'Sullivan*, 233 F. Supp. 3d at 928. But "an expert's testimony may not usurp the jury's fact-finding function." *Id.* (citing *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)). Mr. Dietz may not offer ultimate legal conclusions or "simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id.* at 929 (quotation omitted). The Court will therefore exclude the italicized portions of the opinions above and any similar testimony by Mr. Dietz as to the ultimate issue of whether Defendant's handling of Plaintiff's claim was unreasonable. The Court finds such ultimate conclusions would not be helpful to the jury and would improperly intrude on its fact-finding function. This is so even though Mr. Dietz's standards are derived from the Model Act as opposed to a statute or the case law. For one thing, the Court sees no principled basis for distinguishing the Model Act and § 10-3-1104(1)(h), which overlap significantly. More fundamentally and importantly, however, Mr. Dietz may not simply proclaim that Defendant acted unreasonably or violated subjective standards. The Court has cited *O'Sullivan*, 233 F. Supp. 3d at 924-30, throughout this Order, and finds the proposed testimony in that case is analogous to that of Mr. Dietz. The Court will similarly limit Mr. Dietz's testimony at trial. Thus, Defendant's Motion is granted in part and

denied in part as set forth above.

### E. Defendant's Motion for Partial Summary Judgment

Defendant argues it is entitled to summary judgment on Plaintiff's common law bad faith and statutory unreasonable delay claims because there is no admissible evidence demonstrating that it acted unreasonably and because the value of Plaintiff's UIM claim was fairly debatable. Plaintiff contends there his bad faith claims are supported by admissible evidence, and therefore summary judgment is inappropriate. The Court agrees with Plaintiff.

First, because the Court is not granting in its entirety Defendant's Motion to Preclude pertaining to Mr. Dietz, there is admissible evidence in the form of Mr. Dietz's testimony regarding whether Defendant acted unreasonably in its handling of Plaintiff's claim. There is also evidence in the form of testimony from Defendant's corporate representative regarding industry standards and the decisions made by Defendant in the course of handling the claim. Thus, a reasonable jury could conclude that Defendant acted unreasonably.

Second, in part because the Court is denying Defendant's Motion to Preclude pertaining to Dr. Perrillo, there is also admissible evidence in the form of Dr. Perrillo's testimony about whether Plaintiff sustained a TBI in the accident. As noted above, both sides have lined up experts to present competing views of the relevant issues in this case. For present purposes, the Court finds there are relevant facts in dispute and that the evidence adduced permits differing inferences as to the reasonableness of Defendant's conduct.

Third, "although fair debatability is part of the analysis of a bad faith claim, it is not necessarily sufficient, standing alone, to defeat such a claim." *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). While Defendant has adduced evidence that it acted reasonably, viewing Plaintiff's competing evidence in the light most favorable to him, the

Court finds there are genuine issues of material fact precluding summary judgment.

Accordingly, Defendant's Motion is denied.

## IV. CONCLUSION

Therefore, the Court ORDERS as follows with respect to the pending Motions:

(1)  Defendant's Motion to Preclude (ECF No. 61) is DENIED;

(2)  Defendant's Motion to Strike (ECF No. 73) is GRANTED;

(3)  Plaintiff's Motion to Strike (ECF No. 57) is DENIED;

(4)  Defendant's Motion to Preclude (ECF No. 59) is GRANTED IN PART and DENIED IN PART; and

(5)  Plaintiff's Motion for Partial Summary Judgment (ECF No. 58) is DENIED.

DATED this 10th day of May, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge